# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0540, <u>State of New Hampshire v. Kierran Pierce</u>, the court on March 18, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendant, Kierran Pierce, appeals his convictions, following a jury trial in Superior Court (<u>Leonard</u>, J.), on two counts of aggravated felonious sexual assault, <u>see</u> RSA 632-A:2, I(l) (2016), and one count of felonious sexual assault, <u>see</u> RSA 632-A:3, III (2016) (amended 2020). We affirm.

The jury could have found the following facts. When the victim was seven or eight years old, he lived, along with his sister and brother, with their grandparents in a mobile home. In September 2016, the defendant, who is the victim's grandfather's nephew, visited the victim's family for a few days at that home.

During that visit, the defendant approached the victim in the living room and asked the victim to go with him to the victim's sister's room. Once there, the defendant sat in a reclining chair in the middle of the room and asked the victim to pull down the defendant's pants. The victim testified that, because the defendant asked him to do so, he used his "hands to thrust [the defendant's] penis." At some point after that, the victim and the defendant changed positions and, with the victim in the chair, the defendant pulled down the victim's pants and performed fellatio on him. The victim testified that the bedroom door was open during these assaults.

The next day, the victim approached the defendant, who was in the bathroom with the door open, and asked if he could use the defendant's phone to play a game. The victim testified that the defendant said that he would let the victim use the phone if the victim "let [the defendant] do what he did." The defendant put his hands down the victim's underwear and touched the victim's penis. The defendant then pulled down the victim's pants and performed fellatio on him.

Before the defendant's visit ended, the victim told his sister that the defendant had touched his privates. The victim's sister wrote a note to their grandfather indicating that the defendant had touched the victim's privates, and gave the note to the grandfather on the day the defendant left. The grandfather did not contact the police at that time, but kept the note and gave

it to the police three years later, after the victim had disclosed the assaults to a therapist.

The defendant was charged with two counts of aggravated felonious sexual assault and one count of felonious sexual assault. Following trial, the jury returned guilty verdicts on all counts. This appeal followed.

The defendant first argues that the trial court erred in denying his motion for a view. "[T]he decision whether to allow a view is within the discretion of the trial court" and "[w]e will not disturb the court's decision absent an unsustainable exercise of discretion." State v. Pierce, 176 N.H. 487, 494 (2024), 2024 N.H. 12, ¶25. "In applying our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." Id. To the extent the defendant contends that a different standard of review should apply because he asserts that he had a constitutional right to a view in accordance with his state constitutional right to produce all proofs favorable, see N.H. CONST. pt. I, art. 15, and his due process rights under both the State and Federal Constitutions, see id.; U.S. CONST. amend. XIV, he has not persuaded us to overturn our established precedent.

The defendant contends that because no other evidence "could accurately show how close . . . others would have been during the alleged assault," and, thus, whether the assaults could have been committed "unseen or unheard," a view was necessary to allow the jury to assess the plausibility of the victim's claims. He argues that the trial court erred in denying his motion for a view because it failed to consider whether the proposed evidence was relevant, helpful to the defendant, or necessary for him to receive a fair trial, but instead, "based its ruling on the privacy interests of the people currently living in the residence." We disagree. While the trial court did express concern about the privacy interests of the property's current residents, we agree with the State that the court denied the motion because it "did not have a sufficient record upon which to grant the defendant a view." At the hearing on the motion, the trial court noted that the "Defense hasn't obtained any additional information that might assist the Court in providing the relief that the Defense wants" — not only information about the current residents' amenability to a view, but also whether the property looked the same as it had at the time of the assaults.

"In this State a view is evidence." State v. Booton, 114 N.H. 750, 757 (1974). As the proponent of that evidence, the defendant had the burden to demonstrate its admissibility. See State v. Hammell, 155 N.H. 47, 49 (2007). Here, although the defendant speculates that "[t]here is no reason to think that interior walls have been added or taken out such that the sight lines into the [victim's sister's] room or the acoustics of the residence have changed," he made no effort to establish, or even make an offer of proof, that the current

2

condition of the property was such that a view would be helpful, and not misleading, to the jury. See RSA 519:21 (2021); N.H. R. Ev. 403. Accordingly, the trial court did not unsustainably exercise its discretion in denying the defendant's motion for a view.

The defendant next argues that the trial court erred in denying his motion to set aside the verdicts as against the weight of the evidence. "[A] verdict conclusively against the weight of the evidence is one no reasonable jury could return . . . ." State v. Spinale, 156 N.H. 456, 465 (2007) (emphasis and quotation omitted). "Because the trial court has greater discretion when ruling upon a motion to set aside the verdict as against the weight of the evidence [than upon a motion challenging the sufficiency of the evidence], our scope of review of such a decision is narrower." Id. at 466. "We will uphold the trial court's decision unless it was made without evidence or constituted an unsustainable exercise of discretion." Id.

The defendant argues that the verdicts were against the weight of the evidence because the victim's testimony was not credible. He contends that the first assault could not have occurred when the victim's grandfather was at work, as the victim had stated in his interview at the Child Advocacy Center, because the grandfather's testimony established that the defendant had been with the grandfather for the entire time he was at work. The defendant also notes that the victim testified that the second assault happened the day after the first, but not on the day the defendant left, and argues that this testimony was "clearly contradictory" because the only day he "was present at the trailer after the first alleged assault was also the day that he left."

The State counters that the way the jury resolved "the victim's confusion about who was home during the sexual assaults, or about [the] date [on which] the assault occurred . . . does not render the verdicts against the weight of the evidence, especially considering the victim consistently testified about the sexual assaults themselves." We agree. "Inconsistencies in testimony and failure to remember aspects of some observed or experienced event present questions of veracity reserved for the jury." State v. Sargent, 148 N.H. 571, 577 (2002). "[T]he jury has substantial latitude in determining the credibility of witnesses." State v. Gubitosi, 152 N.H. 673, 680 (2005). It "may accept some parts and reject other parts of testimony, and adopt one or the other of inconsistent statements by witnesses." Id. The minor inconsistencies in testimony cited by the defendant do not render the verdicts in this case "one[s] no reasonable jury could return." Spinale, 156 N.H. at 465 (emphasis and quotation omitted).

Finally, the defendant argues that the trial court may have erred in its in camera review of the victim's counseling records. He contends that because our decision in State v. Girard, 173 N.H. 619 (2020), "was published less than a month before the trial court made its disclosure determinations, . . . it is

3

unclear if the trial court applied the standard as clarified by this Court" in Girard. Although the defendant did not request clarification or reconsideration from the trial court, we assume this issue is properly preserved.

After reviewing the victim's counseling records, the Trial Court (O'Neill, J.) released, subject to a protective order, certain records that it determined were "discoverable under the applicable standards." The court's order is dated November 13, 2020 — 28 days after Girard was issued. Absent some evidence to the contrary, we presume that the trial court was aware of Girard, and, accordingly, we conclude that by "applicable standards," the court meant the standard announced in State v. Gagne, 136 N.H. 101 (1992), as clarified by Girard. See State v. Hodges, 176 N.H. 752, 755-57 (2024), 2024 N.H. 44, ¶¶14, 17 (2024) (finding unpersuasive the defendant's argument that the trial court applied the wrong standard in its in camera review of confidential records when the trial court stated that it had applied the applicable standards).

We now consider whether the trial court erred in failing to disclose more of the counseling records it reviewed in camera. "We review a trial court's ruling on the management of discovery to determine whether its decision is sustainable." Id. at 757, 2024 N.H. 44 at ¶18. "When a defendant argues on appeal that a trial court's ruling regarding the disclosure of privileged records is unsustainable, we must review the same records and determine whether the ruling was clearly unreasonable or untenable to the prejudice of his case." Id. After reviewing the records that were examined by the trial court, we conclude that none of the undisclosed records meets the standard for disclosure as clarified in Girard. Accordingly, we find no error.

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**